MARK E. ANDERSON, Appellant, v. THE DEPARTMENT OF PUBLIC PROPERTY, CITY OF SPRINGFIELD, *et al.*, Appellees.

Fourth District   No. 4—85—0532

Opinion filed February 4, 1986.

William D. Reid, of Cavanagh, Hosteny & O'Hara Law Offices, of Springfield, for appellant.

William A. Murray, Assistant Corporation Counsel, of Springfield, for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Mark E. Anderson appeals from an order of the circuit court of Sangamon County, sitting in administrative review (Ill. Rev. Stat. 1981, ch. 110, par. 3—101 *et seq.*) pursuant to section 10—1—45 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 10—1—45), which affirmed an order of the Springfield civil service commission, which had upheld plaintiff's discharge from employment with the city of Springfield. Pursuant to ordinance No. 794—10—76, enacted October 26, 1976, the city established the requirement that all city employees maintain their domicile and *bona fide* place of residence within the corporate limits of the city of Springfield during all periods of employment with the city. (Springfield, Ill., Ordinance 794—10—76, sec. 1 (October 26, 1976).) This ordinance has been codified at section 2.5.2 of the city's code. (Springfield, Ill., Code sec. 2.5.2 (1976).) Written charges were filed with the city civil service commission against plaintiff, a relief operating engineer with Springfield's department of public property; and plaintiff was given a 30-day suspension pending termination. The commission, as affirmed by the circuit court, ordered plaintiff's termination and discharge from employment with the department. On appeal, plaintiff argues that (1)

the decision of the civil service commission was against the manifest weight of the evidence; and (2) the sanction of discharge was inappropriate in light of lesser sanctions recently imposed upon employees in similar circumstances. We affirm.

By letter of November 10, 1983, the city's director of personnel, William Capie, wrote to plaintiff advising him of section 2.5.2, which provided:

"(a) All officers and employees of the City of Springfield shall maintain their domicile and bona fide place of residence within the corporate limits of the City of Springfield during all periods of service with the city. This section shall include all part-time, full-time and temporary employees.

(b) If any person affected by this section fails to comply with its provisions, he or she shall be immediately discharged and employment shall be terminated with the City of Springfield by the appropriate commissioner of the Springfield city council.

(c) Any person employed by the City of Springfield or any of its departments who shall move his bona fide residence outside the corporate limits of the City of Springfield while so employed and after the effective date of Ordinance No. 794—10—76 shall submit his resignation forthwith or otherwise have his employment terminated.

(d) This section shall be applied prospectively only; however, if an individual who is employed by the city prior to the enactment of Ordinance No. 794—10—76 lives, resides or otherwise maintains a bona fide residence outside the corporate limits of the City of Springfield, then his continued employment shall not be affected; provided, however, that any individual whose property shall be annexed or who shall move into the city after the effective date of Ordinance No. 794—10—76 shall be subject to the requirements of this section in that employment shall be terminated shall such individual change his bona fide residence to a residence outside the corporate limits of the City of Springfield, Illinois, subsequently." (Springfield, Ill., Code secs. 2.5.2(a) through (d) (1976).)

Capie's letter went on to inform plaintiff that the city council had reaffirmed the residency requirement "with its adoption of Employment Policies on January 5, 1982, in Article I, Section 5 ***." The letter continued:

"Evidence exists that you reside in Roby, Illinois, and are, therefore, not in compliance with the City's residency require-

ment. You are hereby requested to demonstrate to this office that you are in compliance with the City's residency requirement within 15 days from the receipt of this letter or to resign your position of employment with the City. If you fail to do either, appropriate steps shall be undertaken to have you discharged from employment."

The plaintiff wrote Capie shortly thereafter, informing him that he had moved from 1124 North 4th Street in Springfield about a month earlier, and was residing at 1425 South Grand Avenue East in Springfield. Plaintiff also stated that his house in Roby had been purchased sometime earlier with the intent to rent it out, but due to personal problems with his wife, this had not taken place.

When written charges were filed on January 18, 1985, plaintiff requested a hearing before the commission which was conducted on February 18, 1985. The commission's order of March 4, 1985, terminated and discharged plaintiff from employment, stating that the evidence had specifically shown:

"d. That [plaintiff] and his spouse entered into a contract for deed with Dorothy Snyder for the purchase of residential property in Roby, Illinois, dated November 16, 1981.

e. That [plaintiff's] son was enrolled in the Mount Auburn Grade School, Mount Auburn, Illinois on November 25, 1981, and remained enrolled there until January 28, 1985.

f. That [plaintiff] had maintained no utility account with the City of Springfield, Illinois, since 1978 and specifically maintained no utility accounts with the City for 1124 North 4th Street or 1425 South Grand Avenue East.

g. That [plaintiff] commuted to work with a 1976 Pontiac, License Plate No. HHU221.

h. That on eight occasions between midnight and 6 a.m. during November and December, 1984, security personnel from the Department of Public Property checked the residence at 1425 South Grand Avenue East and could not locate any vehicle registered to [plaintiff] or his spouse at that residence.

i. That on four occasions Department security personnel checked a residence in Roby, Illinois, in December, 1984, and on all four occasions, a 1976 Pontiac, License Plate HHU221 and a red Ford pickup truck registered to Mark [plaintiff] and DiAnne Anderson were observed to be located at the premises.

j. That Section 2.5.2 of the Code of the City of Springfield, Rule 11.09(N) of the Civil Service Commission, and Section 5

of the Employment Policies of the City of Springfield provide that employees are to maintain a continuous bona fide residence within the corporate limits of the City of Springfield.

k. That [plaintiff] was maintaining a bona fide residence outside of the City of Springfield, Illinois.''

The order stated that the failure to maintain a residence within the corporate limits of the city was a violation of section 11.09(N) of the commission rules, section 5B of the employment policies, and section 2.5.2 of the city code.

According to the evidence, the city's investigation had disclosed that plaintiff's grandfather lived at 1425 South Grand Avenue East; and only the grandfather's car appeared at that address on the eight occasions (seven dates between November 17, 1984, and December 9, 1984) checked.

The plaintiff presented the testimony of Dawn Carver, a city employee, that it had come to the attention of the city that she had been living outside the corporate city limits. Carver testified that she was suspended for nine days; she had received a letter requiring her to show proof that she lived in the city; and she had provided this proof after her suspension, when she moved back into Springfield. On re-cross-examination, Carver acknowledged that the letter she had initially received from the city suspended her for 30 days pending termination. This suspension had been reduced after she furnished proof that she had moved back within the city limits.

In the city's case in chief, the personnel manager who directed the investigation of plaintiff's residence testified that the city had rigidly adhered to a practice of suspending individuals when it was determined that they lived outside the city of Springfield. On questioning, she further stated that she had knowledge of occasions in December 1984 and January 1985 when persons in such circumstances were not discharged. In one case the individual was suspended for nine days and reprimanded; the other individual was also suspended for nine days. On redirect examination, she testified that in both other cases, the individuals were given letters prior to their suspension asking them to furnish evidence that they resided in the city of Springfield. After receiving these letters, both employees immediately made plans to alter their residence, and both brought in documentation to support *bona fide* addresses showing they had re-established residency in the city. She said that, in addition to the nine-day suspension, one of the individuals, Dawn Carver, "failed to receive a merit increase that had been previously put in for her." Carver's testimony corroborated this fact.

The plaintiff did not testify. He did not call his wife to testify, nor did he call his grandfather whose residence was at 1425 South Grand Avenue East.

■ On appeal, as in the circuit court and before the commission, plaintiff argues that the city had to prove that he did not live within the corporate city limits beyond a reasonable doubt, rather than by a preponderance of the evidence. Plaintiff offers no authority to support this argument, and we know of none. In a criminal action by the government against the citizen, the latter may lose his life or his liberty, while no such consequence follows in a civil case. For this reason, no more is required than that the cause of action or defense be proved by a preponderance or greater weight of the evidence. *Sundquist v. Hardware Mutual Fire Insurance Co.* (1939), 371 Ill. 360, 365, 21 N.E.2d 297, 299-300; *Drezner v. Civil Service Com.* (1947), 398 Ill. 219, 227, 75 N.E.2d 303, 307; *Oratowski v. Civil Service Com.* (1954), 3 Ill. App. 2d 551, 553, 123 N.E.2d 146, 147.

■ ■ Our supreme court has described a two-step process for review of an administrative agency's decision on discharge of an employee: (1) to determine whether the agency's findings of fact are contrary to the manifest weight of the evidence; and next (2) to determine whether the findings of fact provide a sufficient basis for the conclusion that cause for discharge exists. The latter is not tested by the manifest weight of the evidence, but whether the decision is arbitrary, unreasonable, or unrelated to the requirements of the service. (*Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 257-58, 449 N.E.2d 845, 848-49; *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 550-51, 426 N.E.2d 885, 887; *Secretary of State v. Kunz* (1983), 116 Ill. App. 3d 736, 739, 452 N.E.2d 387, 389; *Department of Driver Services, Secretary of State v. Secretary of State Merit Com.* (1985), 132 Ill. App. 3d 753, 754, 477 N.E.2d 1372, 1374.) In applying this rule of law, the following statutory provision must be considered: "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat. 1983, ch. 110, par. 3—110; see *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 550, 426 N.E.2d 885, 887.) In this case, the circuit court did not find the commission's findings of fact to be contrary to the manifest weight of the evidence. Our review of the record renders the same conclusion.

■ ■ The term "burden of proof" encompasses both the burden of producing evidence that will satisfy the trier of fact of the exist-

ence of an alleged fact and the burden of persuading the trier of fact that the alleged fact is true. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 462, 448 N.E.2d 872, 876, citing McCormick, Evidence sec. 336, at 783-84 (2d ed. 1972).) The burden of production is satisfied by evidence which, when viewed in the light most favorable to the burdened party, is sufficient to enable the trier of fact to find the issue for him; and the burden is satisfied if sufficient evidence was introduced to enable the trier of fact to find each element of the cause of action more probably true than not, thereby presenting a *prima facie* case. If no evidence is produced which contradicts or impeaches such evidence, and the testimony of witnesses is not otherwise rendered inherently improbable, such evidence cannot arbitrarily be disregarded. Such a case permits only of inferences favorable to the burdened party, effectively shifting the burden of production to the opposing party; and the absence of any evidence to meet the *prima facie* case requires the trier of fact to rule for the burdened party as a matter of law. See E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 301.4, at 55-57 (3d ed. 1979).

With respect to the second step of the analysis, Illinois courts have often stated that the question of whether there is sufficient cause for discharge is generally for the agency to determine, and that substantial deference must be given to the agency's ruling on the question of cause. Here, the plaintiff argues only that a sanction of discharge was too severe in light of the discipline imposed on other employees in similar circumstances. The record, however, shows that the two employees as to whom evidence of discipline was adduced were not, in fact, in comparable circumstances to those of the plaintiff. Both of those individuals moved back inside the corporate city limits after being placed on suspension, furnished the city documentation of their relocation, and apparently had their suspensions reduced on that basis, also thereby avoiding discharge from employment.

For the reasons stated above, we affirm the decision of the circuit court affirming the decision of the commission.

Affirmed.

GREEN and SPITZ, JJ., concur.