CAMILLE TOMCZAK, Plaintiff-Appellant, v. PLANETSPHERE, INC., d/b/a Orbit Skating Center, Defendant-Appellee.

First District (1st Division) No. 1—99—3603

Opinion filed August 14, 2000.

Simpson & Cybak, of Chicago (Robert Cybak and Ronald Hahn, of counsel), for appellant.

Sanchez & Daniels, of Chicago (Mark E. Winters and Heather D. Erickson, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:
This is an appeal from an order that granted summary judgment

to defendant. Plaintiff, Camille Tomczak, appeals, claiming that the Roller Skating Rink Safety Act (the Act) (745 ILCS 72/1 *et seq.* (West 1998)) does away with the requirement that a plaintiff must allege and prove actual or constructive notice on the part of a landowner before liability will attach. This is an issue of first impression under the Act. We affirm.

Plaintiff testified in her deposition that she was roller skating on November 16, 1996, at Orbit Skate Center in Palatine, which is owned and operated by defendant, Planetsphere, Inc. Plaintiff considered herself a beginner skater though she had skated when younger and had recently begun to skate again. She made several trips around the rink going forward. She then took a concession break for a few minutes. During that time a male skater slipped and almost fell on what appeared to be water on the rink floor. An unidentified person went to the floor with towels obtained from a rail near the snack bar area and wiped up the puddle of water, which was approximately 18 inches in diameter. Thereafter, plaintiff resumed skating and decided to skate backwards for a while. While doing so, and after some turns around the rink, she slipped and fell, fracturing her elbow. She noticed water near where she fell and also testified that she fell in the area where the other skater had nearly fallen. There was a skylight immediately above the area where her fall occurred. She did not see the puddle she fell in prior to the time of her fall. She was also unable to say how long the puddle was present.

The following exchange occurred in her deposition:

"Q. Would it be fair to say that that puddle could have been there anywhere from ten seconds to ten minutes, you just don't know?

A. I don't know that.

Q. Do you have any information whatsoever as to where this water came from?

A. Other than from the roof, from the sky, from the ceiling, overhead pipes, I don't know.

Q. What makes you think that the water came from overhead?

A. There was nobody skating around with drinks in their hands. Logically speaking, it—

Q. Would it be fair to say that you're guessing that the water came from the roof or from overhead?

A. Yes.

Q. But on your own personal knowledge, can you tell me, based upon anything you observed, either before or after your fall, where the water was coming from?

A. I don't know that."

Plaintiff's friend, Mary Ellen Habetler, was accompanying her at

the rink on the day of the occurrence. Habetler was skating with plaintiff when she fell. Habetler testified during her deposition that she did not know what caused plaintiff to fall. She had observed water on the floor earlier, during the concession break, and had seen a man wipe up the water with a towel or a rag. She also testified that she did not look at the floor surrounding plaintiff after plaintiff fell. She did not notice if plaintiff's clothes were wet or see anything on the floor that would indicate to her the cause of plaintiff's fall. Ms. Habetler did not see any water dripping from the ceiling, nor did she see any leaking from the skylight. Neither Ms. Habetler, plaintiff, nor anyone else made a complaint concerning water falling from the ceiling.

Defendant had one employee, Loring Winslow, on duty on the day of the occurrence. Mr. Winslow testified at his deposition that he was responsible for preparing the skating surface for the sessions, maintaining the facility, admitting skaters to the rink, operating the concessions stand, working the rental desk, playing music, and serving as a skate guard or supervisor. Part of his duties included a routine visual inspection of the skating area 15 minutes prior to each skating session. Mr. Winslow had no recollection of the November 26, 1996, skating session, had never heard any complaint of water being on the floor of the rink or of a leaking skylight, and had not known of plaintiff's accident until he was asked to give a deposition in this matter. Sandra Carter, a vice president of defendant, testified that Mr. Winslow was the only employee present on November 26, 1996. He would act as a skate guard as well as manager.

Plaintiff was taken to Northwest Community Hospital, where she underwent surgery the same day to repair her fractured elbow. Plaintiff required two additional surgeries.

After full briefing and a hearing, the trial court granted defendant's motion for summary judgment on June 22, 1999. A motion for reconsideration was denied on September 15, 1999. A timely notice of appeal was then filed. We review the grant of summary judgment *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732, 735 (1993).

Plaintiff has raised three points asserting that the trial court erred in granting summary judgment. First, plaintiff states that the Act was passed without mention of the requirement that a landowner must have notice of a condition before liability will be established. Therefore, plaintiff posits, notice is not a requirement to the imposition of liability in this context. Next, plaintiff argues that summary judgment was wrongfully granted because plaintiff has raised questions of fact relating to whether defendant had notice of the unsafe condition. Third, plaintiff asserts that a question of fact exists as to

whether the most probable cause of the condition was the conduct of defendant or its employees. Plaintiff cites several examples of potential questions of fact that, she contends, preclude summary judgment. The questions include: whether drinks were ever spilled on the rink; whether it is reasonable to infer that some other cause existed for the water spill; whether it had rained the night before; why towels were present at the rink, creating the inference they were there to wipe up spilled water; whether the earlier incident involving the near fall by another skater created the inference that water accumulation was a recurrent problem; and whether Mr. Winslow, as the only employee present, was not a skate guard, as required by the Act, thereby making defendant negligent for not abiding by a provision of the Act to provide skate guards or floor supervisors.

■ We first consider the applicability of notice to the landowner under the Act. The provisions of the Act pertinent to this case are as follows:

> "It is the responsibility of the operator to the extent practicable to:
>
> * * *
>
> (4) When the rink is open for sessions, have at least one floor supervisor on duty for every 200 skaters.
> (5) Maintain the skating surface in a reasonably safe condition and clean and inspect the skating surface before each session." 745 ILCS 72/15 (West 1998).

We disagree with plaintiff that the Act must be read to exclude the requirement of notice. In passing the Act, the General Assembly indicated that its intent was to encourage the operation of roller skating rinks and to make the imposition of liability predictable. Specifically, the statute reads in part: "In order to make it more economically feasible for insurance companies to provide coverage to roller skating rinks at an affordable rate to the owners, occurrences resulting in liability to the owners should be more predictable by limiting the liability that may be incurred by the owners and encouraging the development and implementation of risk reduction techniques. This Act should be liberally construed to best carry out the purposes of this Act." 745 ILCS 72/5 (West 1998).

■ The law regarding liability of landowners where a defect or danger on the premises, not created by the landowner or its agents, is alleged is well settled. In *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456 (1976), our supreme court adopted section 343 of the Restatement (Second) of Torts, which stated:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts § 343 (1965).

The *Genaust* court stated that section 343 "correctly states the settled law regarding the liability of possessors of land to invitees." *Genaust*, 62 Ill. 2d at 468. Thereafter, Illinois Pattern Jury Instructions, Civil, No. B120.09 (3d ed. 1985) (hereinafter IPI Civil 3d No. B120.09), which is based upon section 343, was adopted. *Carey v. J.R. Lazzara, Inc.*, 277 Ill. App. 3d 902, 907 (1996). IPI Civil 3d No. B120.09 provides in part that a plaintiff must prove "[t]hat the defendant knew, or in the exercise of ordinary care should have known, that the condition of his property involved an unreasonable risk of harm to persons on the premises." IPI Civil 3d No. B120.09; *Carey*, 277 Ill. App. 3d at 906. In *Carey*, the court indicated that where plaintiff's complaint alleges the existence of a condition on the premises, and is not focused upon negligent actions of the defendant or its servants, section 343 of the Restatement as embodied in IPI Civil 3d No. B120.09 is a correct statement of the applicable law. *Carey*, 277 Ill. App. 3d at 908-09.

■ Clearly, the import of *Genaust*, section 343 and IPI Civil 3d No. B120.09 is that there is no liability for a landowner for dangerous or defective conditions on the premises in the absence of the landowner's actual or constructive knowledge. If the gist of a complaint is that the landowner did not create the condition, the plaintiff must be required to establish that the landowner knew or should have known of the defect. To the same effect is *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 715 (1998), citing *Genaust* and section 343 of the Restatement (Second) of Torts. Thus, even though the Act does not mention a notice requirement, the Act, read together with the common law, makes notice a requirement.

"A legislative intent to abrogate the common law must be clearly and plainly expressed, and such an intent will not be presumed from ambiguous or doubtful language." *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 518 (1997). A statute that is in derogation of the common law is to be strictly construed in favor of the person sought to be subjected to its operation. *In re W.W.*, 97 Ill. 2d 53, 57 (1983). Our courts will read nothing into such a statute " 'by intendment or implication.' " *Hansen v. Caring Professionals, Inc.*, 286 Ill. App. 3d 797, 803 (1997), quoting *Barthel v. Illinois Central Gulf R.R. Co.*, 74 Ill. 2d 213, 220 (1978). Here, the Act makes no indication it is to be construed in der-

ogation of the applicable common law. In fact, section 5 of the Act, previously cited, indicates that the object of the Act is to make any liability on the part of owners of skating rinks more predictable. Imposing liability in the absence of the common law requirements of notice would hardly do so. We will not infer a change in the law not expressed by the General Assembly. Accordingly, we hold that notice, actual or constructive, must be proved under the Act.[1]

Next, plaintiff has raised many points in support of an inference that defendant might have known or could have known of water dripping from the ceiling or why it might be possible to know: from the presence of towels in the snack bar area and the earlier near fall on water, to the assertion by plaintiff that water was twice present on the rink within 45 minutes. None of these points, however, is evidence that defendant had actual or constructive notice of the presence of water.

■ Generally, liability may be imposed if an invitee, such as plaintiff, is injured by slipping on a foreign substance if (a) the substance was placed there by the negligence of the owner or his employees, or (b) the substance was on the premises through acts of third persons. If, as here, there is no showing how the substance got there, liability may be imposed if it appears that (a) the owner or his employees knew of its presence, or (b) the substance was there a length of time so that in the exercise of ordinary care its presence should have been discovered. *Olinger v. Great Atlantic & Pacific Tea Co.*, 21 Ill. 2d 469, 474 (1961).

■ In this case, plaintiff has not asserted that the defendant put the water on the rink surface but, rather, that it was caused by roof or

---

[1]We note that the amended Premises Liability Act (740 ILCS 130/2 (West 1998)), adopted as part of Public Act 89—7 in March 1995 (Pub. Act 89—7, eff. March 9, 1995), contained a provision which provided that owners or occupiers of premises had no duty to warn of latent defects or dangers unknown to the owner or occupier. However, in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997), the court, by reference, invalidated the amended Premises Liability Act. The *Best* court stated: "We emphasize that all of the remaining provisions of Public Act 89—7, which were not challenged in the instant cases, are deemed invalid in this case solely on grounds of severability." *Best*, 179 Ill. 2d at 471. This sentence served to invalidate the amended Premises Liability Act since it was passed as part of Public Act 89—7. It is important to indicate, however, that the amended Premises Liability Act was not invalidated because of any constitutional infirmity but rather because it was not found to be severable from those portions of the public act that had been deemed unconstitutional. Thus, the court did not comment on the continued viability of the substance of the amended Premises Liability Act itself.

skylight leakage. Also, plaintiff has not asserted that defendant, through Mr. Winslow, had actual notice that the water was present. Thus, the relevant inquiry is whether there is evidence that defendant should have known that the water was present. Plaintiff herself said that she did not see water on her other turns around the rink. She herself did not know how long the water had been there. There is no evidence that anyone else, including Ms. Habetler, knew how long this puddle of water was present. Under these circumstances, liability cannot be imposed upon the owner for the presence of a substance that no one had knowledge of immediately prior to the occurrence. To do so would be to make the owner the insurer of the safety of the plaintiff. *Olinger*, 21 Ill. 2d at 476.

In some ways, this case is stronger than *Olinger* for the proposition that defendant is entitled to judgment. In *Olinger*, a sticky red substance was found on the floor and was claimed to have caused plaintiff's fall. Defendant sold a red cough medicine, Coldene, from shelves quite near to where plaintiff fell. The court concentrated on the circumstance where a business invitee slips on a substance in defendant's premises and there is some evidence tending to show that the substance was on the floor through the acts of defendant or his employees. Here there is no evidence that defendant or its employees placed the water on the floor. Rather, the inquiry here is only whether notice of a substance not placed on the premises by defendant or its employees will result in liability. Absent notice, no liability will ensue. Here, by plaintiff's own admission, the water was present an unknown period of time, too short for her to have observed it during her passes around the rink. It follows that such a short passage of time was insufficient to give notice to defendant. Without notice, actual or constructive, liability will not attach to defendant.

In *Hayes v. Bailey*, 80 Ill. App. 3d 1027 (1980), the court affirmed a directed verdict wherein plaintiff fell on a restroom floor that was wet. The restroom had been inspected by defendant's employee at approximately 10 p.m. on the night of the occurrence. Plaintiff slipped and fell on the floor at approximately 12:30 a.m. The trial court explained that it granted the directed verdict because there was no evidence of how long the water had been on the floor, how it got there, or even that plaintiff had slipped on the water.

The Appellate Court for the Third District, in affirming, said that, in a case involving constructive notice, the time element to establish constructive notice is a material factor and that it was incumbent upon the plaintiff to establish that the foreign substance was on the floor long enough to constitute constructive notice to the proprietor of the establishment. *Hayes*, 80 Ill. App. 3d at 1030. The court stated:

"In the instant case, there is no evidence at all as to how long the water had been on the floor of the restroom. Plaintiff simply testified that she slipped and fell and that after she was on the floor she noticed she was wet. In the absence of any evidence tending to show constructive notice we believe it was proper not to submit the case to the jury and to direct a verdict for the defendant." *Hayes*, 80 Ill. App. 3d at 1030.

The same reasoning applies in this context. Summary judgment was properly entered. See also *Chapman v. Foggy*, 59 Ill. App. 3d 552, 556 (1978) (rail in roller skating rink had splinters sticking out of it, and the evidence suggested this condition had existed for some time; evidence was sufficient to support a finding of notice, either presumed or actual, preventing a directed verdict for defendant).

 Finally, we note that plaintiff has alleged that the Act was violated by defendant for failure to have a "skate guard" on duty as required by paragraph four of section 15 of the Act. The Act refers to a "floor supervisor," not to a "skate guard." Nevertheless, Mr. Winslow testified that he was present on November 26, 1996, as the skating supervisor. Therefore, we fail to see any violation of the Act.

The judgment of the circuit court is affirmed.

Affirmed.

O'MARA FROSSARD, P.J., and COHEN, J., concur.