NO. 4-98-0115

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

DEBRA K. REED and GARY D. REED, ) Appeal from

Plaintiffs-Appellants, ) Circuit Court of

v. ) Coles County

WAL-MART STORES, INC., a Foreign ) No. 95L78

Corporation, )

Defendant-Appellee, ) Honorable

) Paul C. Komada,

) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

On May 7, 1997, plaintiffs Debra and Gary Reed went to a Wal-Mart store in Charleston, Illinois, to purchase some cherry trees.  While looking around the garden area, Debra stepped on a rusty nail protruding from a board in the middle of a path­way.  Debra was injured and sued defendant Wal-Mart for negli­gence.  The complaint alleged that Wal-Mart committed one or more of the following acts:  (1) caused an unreasonably dangerous condition to exist on the premises; (2) permitted the condition to exist, although it knew or should have known of its existence; (3) failed to remove the condition, although it knew it consti­tuted an unreasonable risk; and (4) failed to have an inspection system in effect that would have discovered the condition.  Gary sued Wal-Mart for loss of consortium.  A jury trial was held in October 1997.

Debra testified she was injured in the garden area of Wal-Mart located in the parking lot.  She testified the garden area was delineated with wooden pallets with aisles between them. The wooden pallets were used to display shrubs, trees, and other materi­als.  She was looking at some rhododen­drons when she stepped back and felt a stick in her heel.  She looked down and noticed she had stepped on a board with rusty nails in it.  She pulled her shoe off and saw blood on her stocking and the inside of her shoe.  Debra claimed the board was three feet long, three inches wide, unpainted, and made of weathered wood.  The board was located in the middle of the pathway, but within an inch of the nearest pallet.  The pallets were also unpainted and made of weathered wood.  Debra did not know where the board came from and did not notice any pallets with boards missing.

Gary Reed testified he was in the store paying for the cherry trees when Debra was injured.  After paying for the trees, he returned to the garden area and saw that Debra had stepped on the board.  The board ap­peared to be the same materi­al as the wooden pallets.  The wooden pallets were about three feet by three or four feet.  Gary did not notice if any pallets had boards miss­ing.

Timothy Driscoll, the manager of the Wal-Mart store, testified he talked with Debra about the incident that day and filled out a report.  Driscoll went to the garden area and saw the board with nails in it in a shopping cart.  The board may have come from one of the pallets.  Driscoll checked the pallets, but did not find any missing boards.  The pallets are not sold by Wal-Mart for resale, but are used to display lawn and garden prod­ucts.  Several stores sold lawn and garden prod­ucts in the same outdoor complex where Debra was injured.  The other stores, including an Osco drug­store, also used wooden pallets to display merchandise.  Driscoll testified the Osco pallet display was about 20 yards from the Wal-Mart pallet display.  

Ronald Reardon, the Wal-Mart department manager of lawn and garden products, testified the rhododendrons were about 15 feet from the nearest pallets.  He testified the policy was to remove broken pallets, and he had no knowledge of any broken pallets during May 1993.  He had no knowledge of the incident or how the board got there.

At the jury instruction conference, plaintiffs and Wal-

Mart submitted different instructions on negligence.  Plaintiffs submitted a general instruction on negligence, based upon Illi­

nois Pattern Jury Instructions, Civil, No. B21.02 (3d ed. 1995) (hereinafter IPI).  Wal-Mart's in­struc­tion was based on IPI 120.09 (Illinois Pattern Jury Instructions, Civil, No. 120.09 (3d ed. 1995)) and re­quired that plain­tiffs prove Wal-Mart had actual or con­struc­tive knowl­edge of the dangerous condition on the proper­ty.  The trial court accept­ed Wal-Mart's instruction and in­structed the jury accord­ingly.  Plaintiffs' attorney limited his argument, in accordance with the instruc­tions, to the idea that the board had been there long enough (as shown by the rusty nails) that Wal-Mart should have noticed it.  The jury re­turned a verdict for Wal-Mart.

Plaintiffs appeal, arguing the trial court erred in instructing the jury that plaintiffs had the burden of proving actual or constructive notice of the board.  Plaintiffs contend they are not required to prove notice when the facts and circum­

stances show that the dangerous condition was caused by the actions of the defendant or its employees.  We reverse and remand.

Adequate jury instructions should fairly, fully, and comprehensively inform the jury of the appli­cable legal princi­

ples.  
Ciampi v. Ogden Chrysler Plymouth, Inc.
, 262 Ill. App. 3d 94, 105, 634 N.E.2d 448, 457 (1994).  The trial court has the discretion to determine which issues have been raised by the evidence and which instructions should be read to the jury.  A litigant is entitled to an instruc­tion on his theory of the case if there is some evidence, even very slight evidence, to support that theory.  
People v. Jones
, 175 Ill. 2d 126, 131-32, 676 N.E.2d 646, 649 (1997).  We will not grant a new trial based on a trial court's decision to give or not give a particu­lar in­struc­

tion unless that decision was an abuse of discretion and caused serious prejudice to the complain­ing party.  
Majcher v. Laurel Motors, Inc.
, 287 Ill. App. 3d 719, 736, 680 N.E.2d 416, 427-28 (1997).

In 
Genaust v. Illinois Power Co.
, 62 Ill. 2d 456, 468, 343 N.E.2d 465, 472 (1976), the supreme court established the standard for a landowner's liability for a dangerous condi­tion on the land.  
Genaust
 adopted section 343 of the Restatement (Sec­

ond) of Torts, which stated:

"'A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reason­

able care would discover the condition, and should realize that it involves an unreason­

able risk of harm to such invitees, and 

(b) should expect that they will not discover or realize the danger, or will fail to pro­tect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.'"  
Genaust
, 62 Ill. 2d at 468, 343 N.E.2d at 472, quoting Restatement (Second) of Torts §343 (1965).

However, a plaintiff does not need to prove actual or constructive notice when she can show the substance was placed on the premises through the defendant's negligence.  
Wind v. Hy-Vee Food Stores, Inc.
, 272 Ill. App. 3d 149, 155, 650 N.E.2d 258, 262 (1995); 
Donoho v. O'Connell's, Inc.
, 13 Ill. 2d 113, 122, 148 N.E.2d 434, 439 (1958).  In 
Wind
, the court held that if the plaintiff can show the object is related to the defendant's business 
and
 offers some slight evidence that the defendant or his servants, rather than a customer, placed the substance on the floor, then the court should allow the jury to consider the issue of defendant's negligence without requiring proof of defendant's actual or constructive notice.  
Wind
, 272 Ill. App. 3d at 155, 650 N.E.2d at 262.

In 
Wind
, the court held it was reversible error to require the plaintiff to prove actual or constructive notice where the plaintiff tripped on the edge of a floor mat in the defendant's store.  The defendant's employees placed an old floor mat in the doorway that was wrinkled and curled up at the edges.  Because the employees failed to tape down the edges of the mat, which was the usual practice, the plaintiff tripped over the curled edge.  The court held that the evidence suggested that defendant had negligently installed the mat and, therefore, plaintiff did not need to prove defendant had notice of the condition (
Wind
, 272 Ill. App. 3d at 156, 650 N.E.2d at 263).

Plaintiff also relies on 
Piper v. Moran's Enterprises
, 121 Ill. App. 3d 644, 459 N.E.2d 1382 (1984).  In 
Piper
, the defendant operated a grocery store and displayed some products on wooden pallets.  Defendant instructed its employees to move the goods forward on the pallets so that customers would not have to stand on the pallets to reach the products.  The employees failed to move the goods and plaintiff was injured when she stepped through a hole in one of the pallets.  The court in 
Piper
 held that plaintiff was not required to prove notice because the pallet's exposure was probably caused by the defendant's negli­

gence.  
Piper
, 121 Ill. App. 3d at 652, 459 N.E.2d at 1388.

Plaintiffs contend that, like 
Wind
 and 
Piper
, they presented sufficient evidence that 
defendant's
 negligence created the dangerous condition so that they should not have been re­quired to prove notice on behalf of defendant.  Plaintiffs argue that the board was "related to the defendant's business" because defendant used such boards to display its merchandise.  Also, they argue that the board would likely have been placed there by defen­dant because no customer would have any reason to handle or misplace a board with rusty nails in it.

We agree with plaintiffs that the trial court abused its discre­tion when it required the plaintiffs to prove actual or construc­tive notice.  The plain­tiffs submitted more than "slight" evi­dence to show that the board was placed in the pathway by Wal-

Mart.  There is little doubt the board was related to Wal-Mart's busi­ness.  The most logical explana­tion for the board's origin is that it used to be part of a wooden pallet.  The fact that the board was located in a Wal-Mart aisle surround­ed by Wal-Mart goods indicates that the board came from a 
Wal-Mart
 pallet.  In addi­tion, it is highly unlikely that anyone other than a Wal-Mart employee placed the board in the pathway.  Certainly, no custom­

ers brought the board into the store or broke it off a wooden pallet with the intention of purchasing it.  There is also no reason to believe the board was transported from another store.

Wal-Mart argues the jury was properly instructed on actual or constructive notice because plaintiffs' complaint sought to recover under a premises liability theory, not ordinary negli­gence.  Wal-Mart contends that in the cases relied upon by plain­tiffs, liability focused more on the 
actions
 of the defen­

dant rather than the 
condition
 of the premises.  In 
Wind
, the com­plaint alleged that defendant's employees had negligently in­

stalled and main­tained the floormat.  In 
Piper
, the complaint alleged that defendant's employees failed to move merchandise forward on the pallets and maintained a pallet with a hole in it.  These com­plaints were based on specif­ic actions or inactions of the defendants; there­fore, notice was not an issue. 

Wal-Mart argues the present case is more like 
Carey v. J.R. Lazzara, Inc.
, 277 Ill. App. 3d 902, 661 N.E.2d 413 (1996).  In 
Carey
, the plaintiff was injured when she fell down some stairs at defendant's place of business.  The plaintiff alleged the stairs were too narrow and winding, there was insufficient lighting, and there should have been a center handrail.  The court ruled that the jury instruction on notice was appropriate because liability was predicated on the dangerous 
condition
 existing on the defendant's premises, and not on the defendant's negligent activities.  
Carey
, 277 Ill. App. 3d at 909, 661 N.E.2d at 417.

In this case, plain­tiffs' complaint alleged that Wal-Mart caused an unreasonably dangerous condition to exist on the premises, knew or should have known about the condition, and failed to have an inspection system that would have discovered the condition.  The plain­tiffs' complaint seems to allege 
both
 an ordinary negli­gence cause of action (Wal-Mart 
caused
 the danger­

ous condi­tion) 
and
 a premis­es liability cause of action (Wal-Mart main­tained a danger­ous condition).  Therefore, even if jury instruc­tions are to be strictly confined to the theories alleged in plaintiffs' com­plaint, the plaintiffs' complaint alleged active negligence and did not confine their cause of action to premises liability.  The evidence supported plaintiff's theory that the object was related to Wal-Mart's business and that defendant, rather than a customer, placed the object on the floor. 

Jury instructions provide jurors with the correct principles of law applicable to the evidence that has been submit­ted to them.  
Gaines v. Townsend
, 244 Ill. App. 3d 569, 576, 613 N.E.2d 796, 801 (1993).  Here, the plain­tiffs alleged that Wal-Mart negli­gent­ly placed the board in the path­way, pre­

sent­ed strong circum­stan­tial evi­dence to support that allegation, and then requested the trial court to provide the jury with an ordinary negligence instruc­tion.  The plain­tiffs are masters of their com­plaint and are enti­tled to proceed under which­ev­er theory they decide, so long as the evidence supports such a theory.  The trial court abused its discre­tion by denying the plaintiffs' instruction and requir­ing them to prove actual or constructive notice.

Wal-Mart argues that even if the plaintiffs were errone­ous­ly re­quired to prove actual or constructive notice, that error did not seri­ous­ly preju­dice their right to a fair trial, that even under the plaintiffs' pro­posed in­struc­tion, plain­tiffs would have had to prove that defen­dant created the dangerous condition.  Wal-Mart contends that a jury could not have con­

cluded that defen­dant placed the board in the pathway, but had no actual or construc­tive notice that it did so.  We disagree.  It is entirely possi­ble the jury could conclude that a Wal-Mart employee inad­vertent­ly dropped the board in the pathway without having actual notice of the act.  The jury also could have reasonably concluded that the board was not there long enough to charge Wal-Mart with construc­tive notice.  Whatev­er the jury's reason­ing, we cannot say plaintiffs were not seri­ously preju­diced by having to prove actual or constructive notice, an addi­tion­al and unnec­es­sary element to their cause of action of which they had no direct proof.

For the above reasons, we reverse and remand the cause of action for a new trial and appropriate jury instruc­tions.

Reversed and remanded.

GARMAN, P.J., and STEIGMANN, J., concur.