# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Wells v. Colonial Heights Recreation Center, Inc.*, 2013 IL App (1st) 111850

---

| | |
|---|---|
| Appellate Court Caption | THERESE C. WELLS, Plaintiff-Appellant, v. COLONIAL HEIGHTS RECREATION CENTER, INC., and ERICKSON CONDOMINIUM MANAGEMENT COMPANY, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-1850 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | November 30, 2012<br><br>January 30, 2013<br>February 8, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's complaint stated a cause of action for negligence based on defendants' failure to properly maintain the ladder in the swimming pool of plaintiff's condominium development where she was injured when she slipped and fell while exiting the pool, and summary judgment was improperly entered for defendants, since the evidence was sufficient to raise a question of material fact, and therefore, the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-000699; the Hon. Marcia Maras, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Dwyer, McCarthy & Associates, Ltd., of Chicago (Patrick E. Dwyer III and James E. Coogan, of counsel), for appellant.

Querrey & Harrow, Ltd., of Chicago (Ernie Burden and Emily Widmer, of counsel), for appellees.

Panel

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Gordon and Reyes* concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Therese Wells, appeals the trial court's order granting summary judgment in favor of defendants, Colonial Heights Recreation Center, Inc. (CHRC), and Erickson Condominium Management Company (Erickson). Plaintiff contends the trial court erred in granting summary judgment where there were genuine issues of material fact regarding defendants' negligence. Based on the following, we reverse and remand for further proceedings.

¶ 2                                 FACTS

¶ 3     Plaintiff sustained injuries while climbing out of a swimming pool maintained and managed by defendants. On July 4, 2006, in an attempt to exit the deep end of the pool located in her condominium complex, plaintiff placed her left foot on the bottom rung of an affixed ladder and, as she tried to place her right foot on the ladder, her right foot slipped and her leg became wedged between the ladder and the pool wall. Plaintiff reported the incident to Erickson, the company retained by CHRC to provide day-to-day management services of the pool grounds and common areas of the condominium complex.

¶ 4     On July 1, 2008, plaintiff filed an amended complaint against defendants claiming that, despite the duty owed to plaintiff as a condominium owner and user of the pool, they: (1) "failed to provide a good, safe, and proper place for the Plaintiff to use, occupy, and exit the swimming pool"; (2) "negligently failed to repair the broken pool ladder"; (3) "failed to post a warning to inform pool users of the broken ladder"; (4) "failed to have a continuous and uninterrupted means of egress from the pool"; (5) "failed to maintain the pool ladder in a safe condition"; and (6) "failed to cordon off the broken ladder to prevent pool users from climbing the ladder in a broken and dangerous condition." Plaintiff's amended complaint further alleged that "as a direct and proximate result of one or more of these negligent acts

_____

*Justice Garcia originally sat on the panel of this appeal and participated in its disposition. Justice Garcia is no longer with the appellate court; therefore, Justice Reyes serves in his stead.

-2-

and/or omissions" plaintiff fell and was injured, resulting in damages. In her pleadings, plaintiff identified the defect to be "the slipperiness and instability of the ladder." Defendants filed answers and affirmative defenses.

¶ 5 On October 14, 2008, plaintiff filed answers to interrogatories in which she stated, in relevant part, that she learned after the accident that the pool ladder was broken and not properly affixed and that the "grit" on the ladder steps had been worn down, making the steps smooth. Plaintiff additionally stated that, after the accident, she learned from Ruth Grotzke, the president of the condominium association, that the ladder had been in its condition for two years and that the association had been trying to replace the ladder for two years.

¶ 6 On May 14, 2010, plaintiff filed amended answers to Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2007) interrogatories, in which she listed, *inter alia*, Amanda Wells, Emily Gunter, and Mary Gunter as Rule 213(f)(1) witnesses, and Alan R. Caskey, Ph.D., as a Rule 213(f)(3) expert. Plaintiff provided that Amanda, Emily, and Mary would testify as witnesses to the accident, their observations of the pool and ladder, and their observations of plaintiff's resulting injury. In addition, plaintiff provided that Caskey was expected to testify that defendants were negligent in failing to provide ladder steps or rungs with sufficient slip-resistance and in failing to sufficiently support or "fix in place" the ladder so as to restrict its "give," and that those negligent acts proximately caused plaintiff's injuries.

¶ 7 Plaintiff testified at her deposition regarding the details of the incident, including that, while holding the ladder handrails, she placed her second foot on the ladder and felt the ladder "jerk to the left," causing her right foot to slip, her leg to twist, and her leg to become pinned behind the ladder. Plaintiff additionally testified that, at the time in question, she was a member of the condominium association board and, prior to the incident, she had never complained or heard any other owners complain about the safety of the pool ladder.

¶ 8 Lynn Schubbe testified at her deposition that she worked for defendant Erickson and was responsible for generating plaintiff's incident report approximately one week after the accident took place. Schubbe testified that Erickson had never received any complaints about the ladder prior to plaintiff's incident. According to Schubbe, a company named Aqua-Guard opened and closed the pool and otherwise maintained the pool at the complex by keeping it "safe" and "chemically balanced."

¶ 9 Adam Norman, vice-president of Aqua-Guard, testified at his deposition that his company opened the subject pool for the 2006 season on Memorial Day weekend. While opening the pool, it was Aqua-Guard's job to install equipment such as handrails and ladders. According to Norman, Aqua-Guard also performed weekly maintenance on the pool every Monday, Wednesday, and Friday, from May 27, 2006, through July 15, 2006. Norman said that Aqua-Guard performed a checklist of maintenance work during its visits, including cleaning the pool, cleaning the deck area, testing the pool water and balancing the chemicals, checking for safety violations, and seeking out other potential hazards. According to Norman, Eric Webber was the employee responsible for maintaining the subject pool at the time in question; however, Webber was no longer an Aqua-Guard employee. Norman stated that Webber "should" have visually checked the "snugness" of the ladder handrails every once in awhile, but inspecting for loose handrails was not on the checklist. Norman said

Webber had been advised or trained to visually observe potential hazards and report them despite not expressly appearing on the checklist. Norman added that Aqua-Guard never observed any problems with the ladder in question. Norman said that during the reinstallation of the ladder, any broken or loose rungs, bent or twisted rails, or "anything along those lines" would have been documented. In addition, Aqua-Guard performed maintenance on the subject pool on June 30, 2006, and did not discover any problems.

¶ 10 Gina Jordan, health inspector with the Cook County bureau of public health, testified at her deposition that she conducted inspections of the subject pool. During those inspections, Jordan never noted any violations related to the pool ladder. According to Jordan, she conducted a surprise inspection on May 30, 2006, during which she tugged on the ladder in question with her hands to ensure it was securely fastened to the pool deck. Jordan agreed that she did not enter the pool to observe whether the steps to the ladder were slip resistant. Jordan was satisfied with her inspection on that visit.

¶ 11 Grotzke testified at her deposition that CHRC was responsible for managing the pool, grounds, and common areas of the condominium complex. According to Grotzke, no incidents involving the subject pool or complaints about the ladder had been reported prior to the one in question to the condominium association or CHRC during her tenure as a board member. Grotzke added that she was unaware of any construction or remodeling projects involving the pool during the relevant time.

¶ 12 On January 4, 2011, defendants filed a motion for summary judgment arguing that plaintiff failed to present facts demonstrating they had actual or constructive notice of the alleged defect prior to the incident. Plaintiff filed a response, arguing that defendants had actual and constructive notice of the unsafe condition of the ladder. In addition, plaintiff argued that notice was not required pursuant to *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 700 N.E.2d 212 (1998), where defendants' agent created the unsafe condition, namely, the installation of the ladder by a third party. Of particular relevance, in plaintiff's response to the motion for summary judgment, she argued:

> "The duty is that the Defendants should have known of defects in the pool ladder provided to residents of the member housing organizations. This duty is translated into reasonably inspecting the premises, including the pool ladder. *The question of fact for a jury to decide is whether the failure to inspect the pool ladder to determine whether it was defective or unsafe due to instability and slipperiness was unreasonable and therefore negligent. Whether or not the ladder was unsafe and whether it was reasonable to leave it in that condition or fail to detect its dangerousness is for the jury to decide.* The Defendant posits here that it is sufficient to half-heartedly expect others to inspect the ladder and wait until someone slips on it and is injured before a duty is triggered to do any maintenance. This is analogous to either 'passing the buck' or some twist on an 'empty chair' defense. On one hand, it is actually beneficial to vaguely delegate responsibility for inspections and safety to other parties because it creates plausible deniability of knowledge of any defects. On the other, they attempt to point to non-parties as responsible despite clear proof of delegation of those responsibilities. The law requires more, or at least that is a question of fact whether reasonable maintenance requires more.

*There will be opinions from the Plaintiff's liability expert that the Defendants were actually negligent and that the negligent maintenance and operation of the pool ladder did in fact cause the Plaintiff's injuries.* However, that testimony is not necessary to respond to this motion. This is a motion for judgment as a matter of law, not as a matter of fact. Defendants' clever spin on the facts available at this time does not defeat the clear evidence that there are several genuine issues of material fact remaining to be determined by the trier of fact. Consenting to an inspection and maintenance regime that consisted of the Cook County Public Health Department inspector, an employee of a pool cleaning company, and an unlicensed general maintenance contractor, without actually explicitly establishing that any were responsible for safety inspections and maintenance of this pool ladder created a situation where a breakdown in maintenance was inevitable and would inevitably lead to injury." (Emphases added.)

¶ 13 On March 4, 2011, following a hearing, the trial court granted defendants' motion for summary judgment, finding there was no actual or constructive notice of the defect.

¶ 14 On April 1, 2011, plaintiff filed a motion to reconsider in which she provided excerpts of deposition testimony by plaintiff's daughter and granddaughter, as well as her expert, Caskey, to demonstrate that defendants had notice of the defect. In addition, plaintiff argued the *Reed* case did not require notice in order to state a claim. On April 13, 2011, the trial court held a hearing on the motion. The court limited the hearing to the issue of misapplication of the *Reed* case, finding the depositions attached for the first time were not newly discovered evidence because they were available at the time of the summary judgment hearing despite not being filed for the record. Plaintiff agreed the depositions were not newly discovered. Plaintiff then argued, pursuant to the *Reed* holding, that there were genuine questions of material fact regarding defendants' negligence because defendants had control of the ladder and its maintenance from the time it was installed until the time of the incident. The trial court denied the motion to reconsider, finding the *Reed* case distinguishable on its facts where, in that case, no notice was required because the defect at issue was a nail on a wood plank in the middle of a store compared to the ladder at issue being used for its intended purpose. This appeal followed.

¶ 15                                          DECISION

¶ 16 Plaintiff contends the trial court erred in granting summary judgment in favor of defendants where the court improperly imposed the duty of demonstrating defendants had notice of the dangerous condition because plaintiff pled a cause of action under a general theory of negligence, which does not require notice, as opposed to a premises liability theory. Defendants respond that plaintiff has waived review of her contention where she raises it for the first time on appeal. Defendants maintain that plaintiff consistently pled her cause of action as a claim for premises liability.

¶ 17                                         I. Waiver

¶ 18 We first address the issue of waiver. The supreme court has firmly established that issues not raised in the trial court are deemed waived and may not be raised for the first time on

appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536, 662 N.E.2d 1248, 1253 (1996).

¶ 19       Our review of plaintiff's complaint demonstrates that she pled a cause of action for negligence. A claim for negligence requires evidence that the defendant owed the plaintiff a duty, the defendant breached that duty, and the plaintiff suffered an injury as a proximate result. *Caburnay v. Norwegian American Hospital*, 2011 IL App (1st) 101740, ¶ 46. In her amended complaint, plaintiff alleged that she fell and suffered injuries proximately caused by defendants' failure to provide a safe means of using and exiting the pool, negligently failing to repair the broken ladder, and failing to warn pool users not to climb on or prevent pool users from climbing on the broken ladder. We, therefore, conclude that plaintiff did not waive her negligence claim.

¶ 20       To the extent defendants argue that plaintiff failed to preserve her negligence claim as a result of her responses to their motion for summary judgment, we similarly find there was no waiver. We acknowledge that plaintiff repeatedly responded to defendants' motion for summary judgment by asserting that a premises liability action was established where there was a genuine issue as to notice, actual or constructive; however, in each of those pleadings, plaintiff also maintained that notice need not be proven pursuant to the *Reed* case because there was a genuine issue as to whether defendants created the dangerous condition. When presenting a motion for summary judgment, the defendant bears the initial burden of providing competent evidentiary material, which, if uncontradicted, entitles him to judgment as a matter of law. *Id.* ¶ 30. Defendants challenged plaintiff's complaint on a theory of premises liability, not general negligence. Plaintiff's response to that challenge, while additionally asserting that the notice element required under premises liability need not be proven under a theory of general negligence, did not waive her claim sounding in general negligence.

¶ 21                                   II. Negligence

¶ 22       Plaintiff contends there are genuine issues of material fact precluding summary judgment of her negligence claim where defendants placed a "loose and excessively slippery ladder in the pool."

¶ 23       Summary judgment should be granted only where the pleadings, depositions, admissions and affidavits on file, viewed in a light most favorable to the nonmovant, demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006). Summary judgment is a drastic means of disposing of a lawsuit and should only occur when judgment for the moving party is clear and free from doubt. *Waters v. City of Chicago*, 2012 IL App (1st) 100759, ¶ 7. We review a trial court's decision on summary judgment *de novo*. *Id.* ¶ 8.

¶ 24       We recognize that the trial court granted summary judgment on the basis of lack of notice; however, because our review is *de novo* "we perform the same analysis that a trial judge would perform and give no deference to the judge's conclusion or specific rationale." *Id*. Summary judgment is not appropriate where: (1) there is a dispute as to a material fact, (2) reasonable persons could draw divergent inferences from undisputed material facts, or (3) reasonable persons could differ on the weight afforded to the applicable legal standard.

*Id*. The question before us is whether there was a triable issue precluding summary judgment as to defendants' failure to maintain a reasonably safe ladder in the condominium pool.

¶ 25     Our review of the record demonstrates that the trial court failed to consider plaintiff's negligence claim prior to disposing of the litigation and that claim contained questions of material fact precluding summary judgment.

¶ 26     The deposition testimony on file revealed that the pool ladder was installed at the start of the 2006 swimming season and was not moved or modified prior the accident; therefore, the ladder remained in the control of defendants. In her interrogatory answers, filed on October 14, 2008, plaintiff stated that, after the accident, she learned the ladder was not properly affixed and the "grit" on the steps had been worn off, and that Grotzke told plaintiff the ladder had been in that condition for two years and attempts had been made to replace it for two years. Although it does not appear from the record that plaintiff attached her interrogatory answers to her response to defendants' motion for summary judgment, the answers were filed long before the hearing on the motion, which took place on March 4, 2011.

¶ 27     Moreover, in her amended Rule 213(f) interrogatories, filed on May 14, 2010, plaintiff listed Amanda, Emily, and Mary as proposed witnesses that would testify regarding their observations of the pool and ladder, and their observations of plaintiff's resulting injury, as well as listing her expert, Caskey, who was expected to testify that defendants were negligent in failing to provide a slip-resistant and safely secured pool ladder. See *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 648-54 (2001). Although again it does not appear from the record that plaintiff attached her amended Rule 213(f) interrogatories to her response to defendants' motion for summary judgment, in the motion plaintiff argued that, while the evidence was unnecessary to present in response to defendants' motion for summary judgment on the issue of notice, she had "opinions from the Plaintiff's liability expert that the Defendants were actually negligent and that the negligent maintenance and operation of the pool ladder did in fact cause the Plaintiff's injuries."

¶ 28     In addition, in her response to defendants' motion for summary judgment, plaintiff attacked defendants' reliance on the deposition testimony of Norman, the vice-president of the pool maintenance company, to the extent that Norman's testimony could not personally confirm the safety of the pool ladder at the time of the accident because he was not present for its installation or any subsequent performance of pool maintenance. Plaintiff also attacked defendants' insinuation in their motion for summary judgment that it was somehow the duty of the health inspector to maintain the subject pool ladder.

¶ 29     Viewing the pleadings, depositions, admissions and affidavits on file in a light most favorable to plaintiff, we conclude there was sufficient evidence demonstrating a question of material fact as to plaintiff's negligence claim which precluded summary judgment. As a result, we find the trial court erred in granting summary judgment and disposing of the litigation in its entirety.

¶ 30                                                    CONCLUSION

¶ 31     We reverse the trial court's order granting summary judgment in favor of defendants

where there are questions of material fact on plaintiff's negligence claim. We remand this cause for further proceedings.

¶ 32      Reversed and remanded.