2025 IL App (1st) 240867-U
No. 1-24-0867

SIXTH DIVISION
November 26, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ROCIO TERRAZAS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois, County |
| Plaintiff-Appellant, | ) | Department, Law Division |
| | ) | |
| v. | ) | |
| | ) | No. 2021L007573 |
| THE HARLEM IRVING COMPANIES, INC., an | ) | |
| Illinois corporation, and TARGET | ) | |
| CORPORATION, a foreign corporation, | ) | The Honorable |
| | ) | John A. Simon, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The circuit court (1) erred in granting summary judgment in favor of defendant Harlem Irving Companies, Inc. on the plaintiff's premises liability claim where there were questions of material fact as to whether the defendant was on constructive notice based on evidence that the liquid was sticky and the floor was wet and appeared brown and (2) did not err in granting summary judgment in favor of defendant on the plaintiff's negligence claim where there was no evidence that the defendant's conduct caused the spill.

¶ 2    This matter comes before this court on appeal pursuant to Illinois Supreme Court Rule 301

and 303, involving a premises liability and negligence action arising out of a slip and fall accident

that occurred while plaintiff-appellant, Rocio Terrazas, was on defendant-appellee's, The Harlem Irving Companies, Inc. ("Harlem Irving"), premises.

¶ 3        Defendants, Target Corporation ("Target") and Harlem Irving (jointly referred to as "defendants"), filed a joint motion for summary judgment ("motion"). Following briefing and oral argument, the circuit court granted defendants' motion. Subsequently, plaintiff filed a motion to reconsider the order granting summary judgment, which the circuit court denied.

¶ 4        On appeal, plaintiff asserts that the circuit court erred when it granted defendants' motion arguing that there are genuine questions of material fact regarding (1) whether Harlem Irving had constructive notice of the spill that caused her injury, and (2) whether the spill was reasonably foreseeable. For the following reasons, we reverse summary judgment in favor of defendant Harlem Irving as to plaintiff's premises liability claim, and we affirm summary judgment in favor of defendant as to plaintiff's negligence claim.

¶ 5                                I. BACKGROUND

¶ 6        On July 30, 2019, plaintiff went to a Target store located at the Harlem Irving Plaza, a shopping mall which was owned by Harlem Irving and located at 4104 North Harlem Avenue, Norridge, Illinois, to return items she had purchased. In her deposition testimony, plaintiff testified that, on the day in question, she had entered and attempted to exit the shopping mall through the same entrance/exit, Door E. Plaintiff did not experience any problems entering the shopping mall. She then spent about 30 minutes in the Target store before she began to leave the shopping mall through Door E. Plaintiff described the shopping mall as busy at the time.

¶ 7        While exiting, plaintiff slipped and fell on a liquid substance on tile flooring in the common area hallway of the shopping mall. When plaintiff attempted to stand up, she again slipped and fell on the liquid substance. Plaintiff noticed that the liquid left her hands sticky when she attempted

to stand up. Plaintiff also testified that the liquid substance was colorless and not visible to the plain eye but that it had an odor of alcohol. Plaintiff testified that her clothes were wet from her buttocks to her ankle and noted that there were pop machines near Door E. Plaintiff did not know how long the liquid had been on the floor prior to her accident. Due to the fall, she suffered injuries to her knee, wrist, lower back, and ankle.

¶ 8        On the date in question, Miriam Rentas, a part-time security officer at the shopping mall, was on duty and assigned to the south end of the mall, which included Door E. As part of Rentas's job, she walks through the mall and reports any spills she sees to maintenance or housekeeping. Additionally, in the event of a slip and fall involving injuries, Rentas was required to prepare an incident report and take photographs. While Rentas takes photographs at the scene of any incident, she does not generate the incident report until she returns to her office. Rentas writes the incident report from memory and testified that she is "pretty good at remembering what they state seeing that that's part of my job."

¶ 9        Rentas testified that, on the day of plaintiff's accident, she had patrolled the south end of the shopping mall, including Door E, around 5:00 p.m. At that time, she did not see anything spilled on the floor. Rentas did not witness plaintiff's accident. Instead, she was one of two employees who responded "a few minutes after" the accident around 5:38 p.m. Rentas testified that the liquid smelled like alcohol but that she believed it was pop because of its appearance. Rentas also testified that there were pop machines near Door E. Rentas further testified that she did not know how long the liquid had been on the floor prior to plaintiff's accident.

¶ 10        Rentas took photographs of plaintiff and the surrounding area, including the spill. During her deposition, Rentas testified that the liquid was clear. However, when shown the photographs she took at the scene, Rentas acknowledged that the photographs depicted a brown liquid on the

tile. She testified "I don't remember if it was like that. When I looked at it, I could have sworn it was not that color." During plaintiff's deposition, when she was shown the same photograph, she also confirmed that there was a brown stain or liquid on the floor where she fell. The photographs also depicted a pop machine near Door E where plaintiff fell.

¶ 11     Following her usual procedure, Rentas completed an incident report once she returned to the office following plaintiff's slip and fall. Under the portion of the incident report titled "Injured Party's Version of How Incident Occurred," Rentas wrote that plaintiff "was walking and slipped on pop but [it] smelled like alcohol." In the narrative section of the incident report, Rentas further described:

> "[T]here was a man in front of [plaintiff], he spilled a liquid substance and [plaintiff] slipped and fell ***, she tried to get up and slipped again ***. [Plaintiff] later stated she thinks the male that was in front of her stoled [*sic*] liquor from [T]arget. When I arrived there was pop and what smelled like liquor on the floor."

¶ 12     Plaintiff testified that she did not see the report or take part in preparing it. Plaintiff further testified that she did not see or report that she saw a male steal and spill alcohol in front of her prior to her accident. However, plaintiff witnessed the security guard interviewing a young woman who had attempted to help her stand after the accident to get the young woman's perspective on the accident. Plaintiff suggested that the report of a man stealing and spilling alcohol could have come from the young woman.

¶ 13     The incident report also indicated that William Tate, an employee in Harlem Irving's housekeeping department, cleaned the spill following plaintiff's accident. As part of Tate's duties, he was required to respond to and clean spills throughout the mall even in areas he was not assigned

to work. While Tate testified that he was working on the date in question, he did not remember plaintiff, any details about the accident, or responding to or cleaning the spill. He further testified that he did not clean up the spill and did not know why Rentas wrote that he responded to clean the spill.

¶ 14                                    B. Procedural History

¶ 15        On September 27, 2021, plaintiff filed this complaint alleging against Harlem Irving and Target, the owner of the Target store. The complaint alleged liability for plaintiff's injuries based upon premises liability and negligence.

¶ 16        On June 6, 2023, defendants filed a joint motion for summary judgment. Defendants argued that they were entitled to judgment as a matter of law because neither had actual or constructive notice of the spill. Additionally, Target argued that it owed no duty to plaintiff because it did not own, occupy, manage, or maintain the entryway where plaintiff fell.

¶ 17        In response to the motion, plaintiff conceded that Target owed no duty of care and consented to dismiss count III, the only count alleged against Target. Following this concession, Target was dismissed and is, therefore, not a party to this appeal. Plaintiff also argued that the motion should be denied because there was a question of material fact as to whether Harlem Irving had constructive notice of the spill where the liquid substance was sticky and stained the floor. Additionally, plaintiff argued that the presence of the pop machine near Door E created a question of fact regarding whether the spill was reasonably foreseeable.

¶ 18        On reply, defendants argued that neither the color of the liquid nor the stickiness provided any evidence of the length of time the substance was on the floor and absent such evidence plaintiff cannot establish constructive notice. Defendants further argued that the color is irrelevant as to the length of time the liquid was on the ground, that plaintiff claims that the liquid was wet and slippery

but also sticky were inconsistent, especially since plaintiff failed to establish what the liquid substance was and given that certain liquids could become sticky immediately upon or shortly after being spilled.

¶ 19     Following oral argument, the circuit court granted defendants' motion for summary judgment on November 29, 2023. In its oral ruling, the court reasoned that plaintiff failed to present evidence that could demonstrate that the spill had been there for a sufficient amount of time to put Harlem Irving on constructive notice of the spill. The circuit court relied on a number of cases to support its decision, including *Reid v. Kohl's Department Stores Incorporated*, 545 F. 3d 479 (7th Cir. 2008), *Coleman v. Wal-Mart Stores Inc.*, 2017 WL 168178 (N.D. Ill.), and *Faraj v. Dollar Tree Store, Inc.*, 2017 WL 1375547 (N.D. Ill.). The court found plaintiff's argument that soda pop would take time to turn brown and sticky unconvincing, reasoning that this was pure speculation because soda pop does not take time to turn brown and sticky. On the negligence count, the court reasoned that, pursuant to *Huston v. Pate*, 2022 IL App (4th) 210696, because there was no evidence that Harlem Irving caused the spill plaintiff's claim failed.

¶ 20     Plaintiff filed a motion to reconsider on December 27, 2023. In her motion, plaintiff argued that the court failed to consider the evidence in a light most favorable to plaintiff and, in failing to do so, incorrectly determined that there was no genuine question of material fact. The circuit court denied plaintiff's motion to reconsider on March 25, 2024. Plaintiff filed the instant notice of appeal thereafter on April 18, 2024.

¶ 21                                    II. ANALYSIS

¶ 22     On appeal, plaintiff argues that the circuit court erred in granting defendants' motion for summary judgment in favor of Harlem Irving. Under her claim for premises liability (count I), plaintiff argues that there were genuine questions of material fact whether Harlem Irving had

constructive notice where the liquid was sticky, there was evidence that the spill left a stain on the tile, and Harlem Irving failed to make inspections to discover the spill. Additionally, under her claim for negligence (count II), plaintiff argues that there were genuine questions of material fact as to whether the spill was reasonably foreseeable because Harlem Irving maintains a pop machine near Door E.

¶ 23    Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). A genuine issue of material fact exists when "the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. "A defendant moving for summary judgment may meet the initial burden of production by either affirmatively showing that some element of the case must be resolved in defendant's favor or by showing the absence of evidence supporting the plaintiff's position on one or more elements of the cause of action." *Lopez-Arana v. Brian Properties, Inc.*, 2024 IL App (1st) 231652, ¶ 17 (citing *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 355 (4th Dist. 2000)). On a motion for summary judgment, our standard of review is *de novo. Mancini Law Group, P.C. v. Schaumburg Police Department*, 2021 IL 126675, ¶ 15.

¶ 24    "Illinois has adopted the rules set forth in sections 343 and 343A of the Restatement (Second) of Torts regarding the duty of possessors of land to their invitees." *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 434 (1990). Generally, pursuant to section 343 and under common law, a possessor of land owes its invitees a duty of reasonable care to maintain the premises in a reasonably safe condition. *Id.* "A claim for premises liability requires that a possessor

of land (1) knew or should have known that (2) a condition on the property presented an unreasonable risk of harm and (3) should have anticipated that persons would not discover the danger or would otherwise fail to protect themselves against it." *Hutson v. Pate*, 2022 IL App (4th) 210696, ¶ 44 (citing *Wind v. Hy-Vee Food Stores, Inc.*, 272 Ill. App. 3d 149, 154 (3d Dist. 1995)); *Garcia v. Goetz*, 2018 IL App (1st) 172204, ¶ 31; Restatement (Second) of Torts § 343 (1965) ("A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will failed to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.").

¶ 25    In contrast to premises liability, "ordinary negligence" refers to the standard of care required for a defendant to act as an "ordinarily careful person" or a "reasonably prudent person" would and requires proof that (1) the defendant owed plaintiff a duty, (2) the defendant breached this duty, and (3) that this breach was the proximate cause of plaintiff's resulting injuries. *Id.* at ¶ 45 (citing *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 295 (2000); *Garcia v. Goetz*, 2018 IL App (1st) 172204, ¶ 31); *Winters v. MIMG LII Arbors at Eastland*, 2018 IL App (4th) 170669, ¶ 45.

¶ 26                    A. Constructive Notice - Premises Liability

¶ 27    Plaintiff argues that the circuit court erred in determining that she had failed to present any evidence which demonstrated that Harlem Irving had constructive notice of the spill. Specifically, plaintiff claims that the court failed to consider evidence that the liquid was sticky and left a brown stain in a light most favorable to her when determining whether the liquid substance was on the premises for a sufficient length of time. In Harlem Irving's response, it argues that the circuit court

did not err because neither plaintiff nor any other witnesses had any knowledge regarding how long the spill was on the premises and the photographs did not depict footprints or dirt to suggest the liquid had been there for a sufficient length of time.

¶ 28     One element of premises liability requires that the possessor of land must know or reasonably should know of the dangerous condition on the premises. See e.g., *Hutson*, 2022 IL App (4th) 210696, ¶ 44. Liability will be imposed on a businessowner where a business invitee is injured by slipping on a foreign substance on the premises if (1) the substance was placed there by the negligence of the businessowner, (2) the businessowner's servant knew of the substance was on the premises, or (3) the substance was on the premises for a sufficient length of time such that, in the exercise of ordinary care, its presence should have been discovered, otherwise known as "constructive notice." *Heider v. DJG Pizza, Inc.*, 2019 IL App (1st) 181173, ¶ 31 (quoting *Hayes v. Bailey*, 80 Ill. App. 3d 1027, 1030 (3d Dist. 1980)). In lieu of a "bright-line rule" governing "the requisite time to establish notice, Illinois courts have adopted a case-by-case approach that examines the length of the time the spill existed and the surrounding "circumstances." *Reid*, 545 F. 3d at 483. Relevant circumstances include the area where the spill occurred, the time the spill occurred, the visibility of the spill, and the store's policies on inspecting for spills." *Id.* at 481-82.

> "A businessowner 'has constructive notice of all conditions discoverable by reasonable inspection of the premises.' *Lombardo v. Reliance Elevator Co.*, 315 Ill. App. 3d 111, 120 (2d Dist. 2000). Constructive notice may be proven by demonstrating that a condition existed for an extended period of time and the defendant could therefore have discovered the condition 'through the exercise of reasonable care.' *Id.* If the plaintiff is able to present any evidence

tending to show constructive notice summary judgment is not appropriate and the case should proceed to trial. *Hayes*, 80 Ill. App. 3d at 1030. 'Generally, whether a defendant is deemed to have constructive notice of the existence of a dangerous condition on its property is a question of fact.' *Smolek v. K.W. Landscaping*, 266 Ill. App. 3d 226, 229 (2d Dist. 1994)." *Heider*, 2019 IL App (1st) 181173, ¶ 34.

¶ 29    Plaintiff's testimony that she entered through Door E and did not see a spill or experience any issues, demonstrates that the spill was present for roughly 38 minutes or less. Further, it is undisputed that the spill occurred in a high-traffic area, in an entry/exit doorway, at a high-traffic time, roughly between 5:00 p.m. and 5:38 p.m. during the weekday. The question here is whether plaintiff provided evidence which raised a genuine question of material fact as to whether the spill was on the premises for a sufficient length of time such that, in the exercise of ordinary care, its presence should have been discovered. In its oral ruling, the circuit court impermissibly failed to view the evidence and draw reasonable inferences in a light most favorable to plaintiff as the nonmovant.

¶ 30    First, the circuit court dismissed plaintiff's reasonable inference that the stickiness of the liquid on her hands raised a question of fact that the spill had been there for an extended period of time. Specifically, the court reasoned "even if it was soda pop, that's brown and sticky. It doesn't take time to turn brown and sticky, it's brown and sticky immediately." This conclusion impermissibly draws inferences in Harlem Irving's favor as the movant, rather than plaintiff's favor as the nonmovant. It is true that soda pop may turn sticky, and this may even happen quickly,

but there is another reasonable inference that this could take some time to occur. Such questions of fact should be answered by the jury at trial.

¶ 31     Furthermore, while plaintiff and Rentas testified that they believed the liquid substance was soda pop based upon its visual appearance, both testified that it had an odor of alcohol. This testimony presented evidence that the liquid substance may not be soda pop at all and, instead, may be alcohol. In which case, this also draws a reasonable inference that the liquid may have taken time to become sticky, a question of fact that should be decided by the jury at trial. Alternatively, if the liquid substance was soda pop, the scent of alcohol may indicate that the liquid substance had been out for an amount of time such that its scent was altered. The scent of the liquid raises a question of fact regarding the length of time the spill was present.

¶ 32     Second, the circuit court dismissed plaintiff's reasonable inference that the brown appearance of the liquid on the tile raised a question of fact whether the spill had been there for an extended period of time. Again, here, the court's determination that the liquid substance would be "brown" "immediately" impermissibly draws inferences against plaintiff. Both plaintiff and Rentas testified that the liquid itself was clear or colorless. However, both acknowledged that photographs taken at the scene depicted the liquid as brown or that the tile was stained brown. While the court reasoned that the soda pop liquid would be become brown "immediately," this overlooked evidence which showed that the liquid itself was clear. Often times when a liquid is spilled on the floor it can appear darker in color: this is even true for water. There is a reasonable inference that could be made that the liquid appeared wet and brown on the tile because it had dried down, stained, or picked up dirt. This reasonable inference raises a question of fact whether the liquid was present for a sufficient length of time to create constructive notice which must be answered by the jury at trial.

¶ 33        In reviewing these facts in a light most favorable to plaintiff, it is easy to see how the circuit court's reliance on certain cases is misplaced. In *Reid*, 545 F. 3d 479 (7th Cir. 2008), the Seventh Circuit felt that the plaintiff's argument that a liquid substance was on the premises long enough to partially melt did not demonstrate a question of fact regarding whether the defendant had constructive notice of the spill. *Id.* at 482. The *Reid* court reasoned that because the plaintiff could not establish what the liquid was, where it had come from, or when it was purchased, it was speculation to say that the amount the liquid had melted demonstrated how long it had been on premises because it was entirely possible that the liquid substance (1) was a slightly runny substance when it was acquired or (2) had become slightly melted prior to being spilled. *Id.*; see *Faraj*, 2017 WL 1375547 (N.D. Ill.) (district court reasoned the plaintiff's argument that because the vomit "smelled very bad," it had been there for an extended amount of time was similar to the argument in *Reid* and too speculative).

¶ 34        However, this case is distinguished from our facts. In *Reid*, the plaintiff presented mere speculation that the liquid had melted on the floor, whereas in our case plaintiff has presented evidence which demonstrates that the liquid substance may have been present for long enough to change its properties while on the floor. Plaintiff presented evidence that while the liquid substance was wet on the floor and her clothing, it was sticky on her skin. Additionally, the appearance of soda pop but the smell of alcohol is another potential change in the liquid substance, as is the testimony that the liquid appeared clear but the photographs depicted a brown spot on the tile where plaintiff slipped.

¶ 35        The final case the circuit court cited in its oral ruling was *Coleman v. Wal-Mart Stores, Inc.*, 2017 WL 168178 (N.D. Ill.). The circuit court pointed out that the district court in *Coleman* considered the fact that "the spill was 'rusted orange' and large enough to span multiple floor tiles"

as evidence of constructive notice. In fact, the circuit court noted that this was similar to the brown liquid or stained tiles in our case. However, the court did not give weight to this part of the district court's reasoning, instead distinguishing the case on the basis that there was some evidence in *Coleman* that employees may have been present during the spill or attempted to clean the spill. *Id.* While the circuit court was correct that our case does not present such evidence, it overlooked the fact that *Coleman* did not rest its reasoning on one set of facts or one question of fact and instead looked to the totality of the circumstances. Here, the photographs depicted brown liquid or a spot where liquid was drying down which spanned multiple tiles. There is evidence that the liquid became sticky to the touch, smelled of alcohol, and was brown on the tile. Additionally, the spill happened in a high-trafficked area during a busy time of day. When considering the surrounding circumstances in its totality, plaintiff has raised questions of fact as to whether the spill existed for an extended period of time such that Harlem Irving could have discovered it through the exercise of reasonable care.

¶ 36     In its response brief, Harlem Irving cites a slew of cases in support of its argument that plaintiff failed to provide evidence to show that it had constructive knowledge of the spill. In these cases, the plaintiffs had no personal knowledge of how long the liquid substance had been spilled on the premises, similar to plaintiff here. However, the plaintiffs in these cases failed to provide any other evidence which demonstrated a timeframe which could establish constructive notice. See *Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033 (3d Dist. 2000) (plaintiff slipped on water on an ice rink but offered no evidence which demonstrated how long the water had been there). For example, in a number of Harlem Irving's cases, courts have found where the only facts offered by the plaintiffs to support constructive notice was that the area had not been inspected for spills in some time insufficient to impose constructive notice. *See Hayes v. Bailey*, 80 Ill. App. 3d 1027

(3d Dist. 1980); *Tafoya-Cruz v. Temperance Beer Company, LLC*, 2020 IL App (1st) 190606. Other cases cited by Harlem Irving offered even less than this. See *Ishoo v. General Growth Properties, Inc.*, 2012 IL App (1st) 110919 (court found no evidence of constructive notice where the plaintiff only alleged that the liquid smelled like a cleaning solution that would have been used by the defendant's employees, but the evidence demonstrated that the area was not cleaned until after the store closed and customers had left). These cases are unavailing when considering the totality of the surrounding circumstances and the reasonable inferences that we must draw in favor of plaintiff based upon the evidence she has presented.

¶ 37    We note that Harlem Irving presented some opposing evidence which suggests that the spill may have occurred right before plaintiff was injured. Rentas's incident report stated that someone reported that a man stole liquor from Target and spilled right in front of plaintiff while they were both exiting the mall. Even if the trier of fact determines that the report is inaccurate or uncredible, and that plaintiff's evidence establishes that the spill was there for a longer period of time, the trier of fact will still have to determine whether that length of time was sufficient such that Harlem Irving should have discovered the spill in the exercise of ordinary care. Case law suggests that a spill being present for as little as 10 to 20 minutes may be a sufficient length of time such that a defendant should have discovered the spill in the exercise of ordinary care. See *Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of New York, Inc.*, 2011 IL App (1st) 092860 (The plaintiff had been eating at a restaurant for 20 minutes before she slipped. Prior to her fall, she was able to view the area where she slipped the entire time she was eating and saw no employee or other patron in the area. Thus, "the evidence showed that the grease had existed on the floor for at least twenty minutes" and 20 minutes was long enough to create a question of fact regarding constructive notice.); *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603 (7th Cir. 2001)

(holding that there is no "flat rule in Illinois that ten minutes is always too short a period for a duty of inspection and clean up to arise" and noting that in certain circumstances, such as a busy store where employees traverse aisles often, 10 minutes may be a sufficient amount of time to establish constructive notice).

¶ 38                                    B. Negligence

¶ 39        Plaintiff's complaint alleges that Harlem Irving is liable for her injuries under both premises liability and negligence causes of action. "[P]laintiffs are masters of their own complaint and are entitled to proceed under whichever theory they decide, so long as the evidence supports such a theory." *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 718 (4th Dist. 1998).

¶ 40        The circuit court granted defendants' motion as to plaintiff's ordinary negligence count based on the fact that there was "no evidence that *** Harlem Irving *** caused the spill ***." Plaintiff argues that the court erred because there were questions of material fact as to whether the spill was reasonably foreseeable where Harlem Irving maintained pop machines near Door E. To that end, plaintiff claims the circuit court "should have only looked at the foreseeability of pop spilled in the general vicinity of the incident in order to impose a duty on [Harlem Irving]." However, plaintiff's argument ignores the difference between a premises liability claim and an ordinary negligence claim.

¶ 41        Under certain circumstances where a landowner's conduct in creating an unsafe condition precedes the plaintiff's injury, a plaintiff may elect to pursue a negligence claim, a premises liability claim, or both. *Smart v. City of* Chicago, 2013 IL App (1st) 120901, ¶ 54; (citing *Reed*, 298 Ill. App. 3d at 717-18). However, the difference between premises liability and ordinary liability is that in a premises liability case the defendant is alleged to have "maintained a dangerous condition," whereas in an ordinary liability case the defendant is alleged to have caused the

dangerous condition. *Reed*, 298 Ill. App. 3d at 717; *Garcia*, 2018 IL App (1st) 172204, ¶ 31 ("If a landowner's conduct or activity – as opposed to a dangerous condition on the property – that creates the injury-causing hazard, the claim is one of negligence, rather than premises liability." (citing *Smart*, 2013 IL App (1st) 120901, ¶¶ 54-57)).

¶ 42    Plaintiff does not argue or present any evidence that Harlem Irving caused the dangerous condition, the spill. Rather, plaintiff argues that the spill was reasonably foreseeable because Harlem Irving maintained a pop machine in the area and, as such, Harlem Irving had a duty to reasonably inspect the area. Plaintiff then concludes that Harlem Irving failed to "undergo a reasonable inspection" of the premises. Plaintiff makes a number of leaps in logic in this argument.

¶ 43    First, we cannot say that Harlem Irving's alleged failure to reasonably inspect caused the dangerous condition plaintiff alleges, the spill. Indeed, even if Harlem Irving employees were stationed 24/7 at every pop machine, water fountain, trash can, bathroom, or other place where liquid substances could easily be spilled throughout the shopping mall, spills would still occur through no fault of Harlem Irving. Even if there were 24/7 inspection, business invitees or other third party individuals (i.e. Target employees) could still spill and "create[] [an] injury-causing hazard" on Harlem Irving's premises. The case law cited by the parties in which courts have permitted ordinary negligence claims where an injury was caused by a condition on the premises are factually distinguished from plaintiff's claims here. In these cases, there were factual allegations and some evidence which demonstrated that the defendant itself created a dangerous condition. See *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d at 717-18 (the plaintiffs' complaint alleged the defendant caused an unreasonably dangerous condition to exist on the premises where the defendant's employees placed a board with rusty nails in a pathway used by customers and the plaintiffs were entitled to proceed under both premises liability and ordinary negligence theories);

see also *Smart*, 2013 IL App (1st) 120901, ¶¶ 46-55 (the plaintiff was permitted to pursue an ordinary negligence claim, rather than being required to pursue a premises liability claim, because the city-defendant's resurfacing of an intersection and altering a bike path was ongoing "activity" that subjected the city to negligence claims). As noted above, plaintiff does not provide any evidence nor make any allegation that Harlem Irving caused or created the spill which could permit her to also recover under a negligence claim.

¶ 44    Second, even if we were to overlook this leap in logic, plaintiff fails to provide any evidence or cite any case law which demonstrates that Harlem Irving's inspection procedures were insufficient or not reasonable. Plaintiff admits that security, maintenance, and housekeeping staff were on the premises on the date in question. There is no general duty for a business owner to continuously inspect the business premises. *Heider*, 2019 IL App (1st) 181173, ¶ 35 (citing *Hresil v. Sears, Roebuck & Co.*, 82 Ill. App. 3d 1000, 1002 (1st Dist. 1980)). Plaintiff does not provide any evidence to rebut that Harlem Irving staff, namely Rentas, inspected the area less than 38 minutes prior to plaintiff's fall. Instead, plaintiff takes issue with the fact that Harlem Irving did not provide written policies or procedures regarding wet floors in response to her request to produce, and instead provided an answer detailing its procedures.[1] Plaintiff does not provide any case law that would suggest that failure to maintain written policies/procedures regarding wet floors demonstrates an unreasonable inspection. Further, in her deposition, Rentas also confirmed procedures similar to what Harlem Irving described in its response to the request to produce, evidence which plaintiff does not rebut. In Tate's deposition, he confirmed that he would respond to and clean spills wherever they occurred throughout the mall, even in areas he was not assigned

---

[1] We note that, rather than responding that it had no such written policies/procedures, Harlem Irving objected to this request for production as "vague, ambiguous, overly broad and unlimited in time, nature and scope," and instead provided a written answer, notwithstanding its objection.

to work. Thus, we do not find that the circuit court erred in granting defendants' motion for summary judgment as to plaintiff's negligence count.

¶ 45                                    III. CONCLUSION

¶ 46        For the foregoing reasons, we reverse and remand the judgment of the circuit court granting summary judgment in favor of defendant Harlem Irving on count I (premises liability) and affirm the judgment of the circuit court granting summary judgment in favor of defendant on count II (negligence).

¶ 47        Affirmed in part and reversed and remanded in part.